## Lowenburg *v.* Barr, Appellant.

Argued January 18, 1971. Before JONES, EAGEN, O'BRIEN, ROBERTS, POMEROY and BARBIERI, JJ.

reargument refused November 12, 1971.

*Roland J. Christy,* for appellant.

*Edward Fackenthal,* for appellee.

OPINION BY MR. JUSTICE POMEROY, October 12, 1971:

In this appeal appellant, the grantor of certain real estate, contends that she should not be required to execute a deed, pursuant to a specific performance decree previously granted by the lower court and affirmed by our Court, unless she receives interest on the purchase price from the appellee-purchaser. The lower court, holding in abeyance the question of interest, decreed that the specific performance previously ordered be effected forthwith.

Briefly, the facts are as follows: In December of 1958 the parties[1] executed an agreement of sale rela-

---

[1] The sales agreement was between Charles R. Barr, M.D., and Gladys E. Barr, his wife as "Seller" and Harry Lowenburg, Jr., M.D., and Joan A. Lowenburg, his wife as "Buyer". The caption of the case names only Joan A. Lowenburg as plaintiff and Gladys E. Barr as defendant. The pleadings have not been made a part of the record on appeal (see our Rule 49) and we do not know why the respective husbands were not joined as parties.

Gladys E. Barr, the original defendant, died on April 4, 1969, and her executrix, Susan Jane Barr, was apparently substituted as defendant. She is the appellant herein. In this opinion we have used the plural in referring to "sellers" and "buyers".

tive to the premises in question. Pursuant to the terms of the agreement, the buyers made a down payment and took occupancy of the first floor of the premises. The vendors, under the agreed terms, were permitted to retain occupancy of the upper floors of the building at a monthly rental of fifty dollars a month for so long as they wished, final settlement for the purchase to take place within sixty days after the vendors vacated.

Aside from the down payment ($2,200), the purchasers were not obligated to pay any part of the purchase price until the time of final settlement. They were, however, responsible for the upkeep of the entire house, although the sellers were to pay their own gas and electricity bills. The buyers remodeled the first floor at a cost of about $5,000 and the parties appear to have abided by the agreement without difficulty until 1964.

In late 1964 the sellers alleged that the buyers had defaulted on their obligation by failing to pay real estate taxes and a fuel bill totaling $571.38. Litigation ensued which resulted in a specific performance decree in favor of the buyers. We affirmed the decree, *per curiam,* without opinion on October 9, 1969. 435 Pa. 637.[2]

Following our decision, the buyers petitioned the lower court for an order enforcing the specific performance decree, which order was granted on January 2, 1970. The order included a direction to seller's counsel to account for the rental proceeds which had accrued during the period of litigation. It appears that the rentals were to be those collected from January 1, 1965 to the date of accounting, and that the net amount

---

[2] At the outset of the litigation, in 1964, the seller was still occupying the premises; however, she vacated the house in 1965. Accordingly, the buyers, under the terms of the agreement, would be entitled to enforce a settlement of the purchase as of that date.

thereof was $4,364.72. Subsequently the lower court ordered that the settlement take place on February 6, 1970. At a meeting on that date the sellers refused to transfer the title and pay over the accrued rentals unless the buyers paid interest on the sales price for the period commencing on the date from which the accrued rentals were calculated, i.e., January 1, 1965. The buyers refused to pay the interest and the seller refused to deliver a deed.

On September 22, 1970, the lower court issued still another order, directing the Prothonotary to attend settlement and transfer title to the buyers upon tender of the purchase price and to allow the buyers a credit of $4,364.22, representing the net accrued rentals and a credit of $6,170.33, representing eminent domain proceeds received by the seller relative to a portion of the property which had been condemned.[3] This order made no mention of the sellers' right to interest. Appellant filed appeals from all three of the above-noted orders[4] and filed a supersedeas petition which was *sub judice*

---

[3] Though appellant argues to the contrary, the contract specifically directs that the benefits of any eminent domain proceedings inure to the benefit of the buyers: "Any condemnation awards hereafter made in respect of said premises or any part thereof shall inure to the benefit of Buyers subject only to the payment of the balance of the purchase price." Appellant presents no persuasive argument as to why this provision should not control.

[4] No. 142 is a direct appeal to this Court from the order (decree) of September 22, 1970. The appeal at No. 122 relates to the proceeds of condemnation of a portion of the property, and the appeal at No. 123 is from the order of January 2, 1970 in aid of execution. The latter two cases were transferred from the Commonwealth Court and consolidated with the appeal at No. 142 by our order of January 18, 1971 because it appeared they were in pari materia. As we read the somewhat confusing record, it appears that the September 22 decree embraces the subject matter of the prior orders, and is in fact the order from which appellant seeks relief by these appeals.

at the time of argument in our Court. Accordingly, no transfer of title has yet been made.

The lower court opinion in support of its September 22 order stated that, although the interest issue was the alleged basis for the sellers refusing to execute the deed, and the right to interest was orally argued before the lower court prior to its September 22 order, "there was no formal issue joined on this question and it was not really before us." Moreover, the court took the position that the right to interest was subordinate to the actual transfer of the title and could be settled after the deed was transferred. Said the court: "[I]f there must be litigation to establish whatever claim defendant feels she may have for interest, so be it. At this time, we believe the first priority should be to convey the property to the plaintiff. The final determination as to who is entitled to what money and who must pay what expenses and charges should not be permitted to frustrate a decree entered in 1966, and affirmed by the Supreme Court more than a year ago."

We agree, and affirm the lower court's decree of September 22, 1970 and its predecessors designed to enforce specific performance. To delay further the previously granted decree in specific performance would be fruitless and unwarranted; that issue has already been finally adjudicated by this Court, and the decree should have been carried out by appellant long since. The interest question has not been definitively decided in the court below and is not properly before us at this time. Even if we were now to address ourselves to that issue, it is doubtful that the record before us contains sufficient factual information upon which a sound appellate decision could be based; specifically, whether the rule of *Leafgreen v. Drake's Executors,* 300 Pa. 369, 150 Atl. 656 (1930) and *Sladkin v. Greene,* 359 Pa. 528, 59 A. 2d 105 (1948) as to the sellers' right to interest

on the purchase price is applicable on the facts of this case. This decision, therefore, is not to be taken as an adjudication of that question.

Decrees affirmed; costs on appellant.

Mr. Chief Justice BELL took no part in the consideration or decision of this case.